**SERVPRO INDUSTRIES, INC., Plaintiff,**

v.

**William W. SCHMIDT and Servpro of Arlington Heights/Naperville, Inc., Defendants/Counterclaimants,**

v.

**SERVPRO INDUSTRIES, INC., Randall Isaacson, Ted Isaacson, Richard Isaacson, Richard Forster, Ted Habermann, James O'Connor, and William Weber, Counterdefendants.**

No. 94 C 5866.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 7, 1995.

Gary Mark Sircus, John E. Mitchell, Scott Alan Lefelar, Rudnick & Wolfe, Chicago, Illinois, for plaintiff.

Wayne B. Giampietro, James Brian Dykehouse, Witwer, Burlage, Poltrock & Giampietro, Chicago, Illinois, for William Schmidt & Servpro of Arlington Heights/Naperville.

John Bell, Burke, Virginia, for Servpro of Arlington Heights/Naperville.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is counterdefendants Servpro Industries, Inc.'s ("Servpro"), Randall Isaacson's, Ted Isaacson's, Richard Isaacson's, Richard Forster's, Ted Habermann's, and James O'Connor's ("individual counterdefendants") (collectively, "counterdefendants")[1] motion to strike and to dismiss counterplaintiff William W. Schmidt's ("Schmidt") and Servpro of Arlington Heights/Naperville, Inc.'s ("SAHN") (collectively, "counterplaintiffs") third amended counterclaim and affirmative defenses. As set forth fully below, the court grants in part and denies in part counterdefendants' motion to strike and to dismiss.

### I. BACKGROUND

Servpro, a Nevada corporation with its principal place of business in Tennessee, provides home and office cleaning services, and grants franchises for the operation of cleaning businesses using the Servpro system. Each of the individual counterdefendants is an officer, director, and/or employee of Servpro. All of the individual counterdefendants reside in Tennessee. Schmidt, a Servpro franchisee, and SAHN, Schmidt's Servpro franchises, are Illinois residents.

In April 1985 and January 1988, Schmidt entered into franchise agreements with Servpro for the territories of Arlington Heights

---

1. Servpro is the only true counterdefendant; the individuals named as parties actually are third party defendants. *See* FED.R.CIV.P. 14. *Cf.* FED. R.CIV.P. 13. However, for the sake of consistency with the parties' pleadings in this case, the court will refer to the individuals as counterdefendants.

and Naperville, Illinois, respectively, thus forming SAHN. In 1994, Servpro audited counterplaintiffs and found that counterplaintiffs had not paid all the royalties that Servpro claimed were due to it. Based on the results of this audit, in April 1994, Servpro sent counterplaintiffs a notice of breach letter claiming almost $104,000 in penalties, and in July 1994, terminated counterplaintiffs' franchise licenses.

In September 1994, Servpro sued counterplaintiffs on numerous grounds, including trademark infringement, unfair competition, and breach of contract. Counterplaintiffs then filed a counterclaim against Servpro and the individual counterdefendants, alleging breach of contract and covenant of good faith and fair dealing (Count I), fraudulent misrepresentation (Count II), violation of the Illinois Franchise Disclosure Act (Count III), fraudulent scheme (Count IV), acceptance of fruits of the fraud (Count V), conspiracy (Count VI), and tortious interference with economic expectancy (Count VII).[2]

Counterdefendants have moved to dismiss all seven of the counts of counterplaintiffs' third amended counterclaim pursuant to FED. R.CIV.P. 12(b)(6) for failure to state a claim upon which relief can be granted; to dismiss the counts against the individual counterdefendants, Counts IV and V, pursuant to FED. R.CIV.P. 12(b)(2) for lack of personal jurisdiction; to strike the fraud counts, Counts II, IV, and V, pursuant to FED.R.CIV.P. 9(b) because they are not pleaded with particularity; to strike the conspiracy count, Count VI, because it is not pleaded with particularity; to strike counterplaintiffs' third amended affirmative defenses pursuant to FED.R.CIV.P. 12(f); and to strike counterplaintiffs' *ad damnum* clauses as groundless.

For the following reasons, the court grants in part and denies in part counterdefendants' motion.

## II. DISCUSSION

### A. Failure to name counterdefendants in Counts IV and V

■ Though counterdefendants do not address it in their motion, the court notes that Ted Isaacson and Richard Isaacson are included as counterdefendants in the caption of this case, yet are not named in any of the counts set forth in the third amended counterclaim. Therefore, counterplaintiffs' third amended counterclaim states no cause of action against Ted Isaacson or Richard Isaacson. Accordingly, on the court's own motion, Ted Isaacson and Richard Isaacson are dismissed from the case as party counterdefendants.[3]

### B. Failure to state a claim

Counterdefendants argue that Counts I through VII of counterplaintiffs' third amended counterclaim should be dismissed pursuant to FED.R.CIV.P. 12(b)(6) because those counts fail to state claims upon which relief can be granted.

■ When deciding a motion to dismiss under FED.R.CIV.P. 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cromley v. Board of Educ. of Lockport,* 699 F.Supp. 1283, 1285 (N.D.Ill.1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. *See* FED.R.CIV.P. 12(b)(6); *Gomez v. Illinois State Board of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Conley v. Gibson,* 355

---

**2.** This case is before the court on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332. Where jurisdiction is based on diversity of citizenship, the resolution of the substantive issues is controlled by the applicable state law. *LaSalle National Bank v. Service Merchandise Co.,* 827 F.2d 74, 78 (7th Cir.1987). The parties apparently agree that the applicable law in this case is that of Illinois.

**3.** The court will continue to refer to the remaining individual counterdefendants—Randall Isaacson, Richard Forster, James O'Connor, and Ted Habermann—as the individual counterdefendants.

U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### 1. Count I—Breach of contract/covenant of good faith and fair dealing

 To state a claim for breach of contract, counterplaintiffs must allege that a contract between them and Servpro existed, that counterplaintiffs performed their contractual obligations, that Servpro breached the contract, and that counterplaintiffs suffered damages due to the breach. *See Derson Group, Ltd. v. Right Management Consultants,* 683 F.Supp. 1224, 1230 (N.D.Ill. 1988). However, a conclusory allegation of a breach is insufficient; counterplaintiffs must state the facts underlying the breach. *Janivo Holding, B.V. v. Continental Bank, N.A.,* No. 91 C 7728, 1992 WL 345391, *3–4, 1992 U.S.Dist. LEXIS 17657, *10 (N.D.Ill.1992) (citing *Kane, McKenna and Assoc., Inc. v. Remcorp, Inc.,* 1988 WL 9108, *4, 1988 U.S.Dist. LEXIS 955, *11–12 (N.D.Ill.1988)).

 Counterplaintiffs plead the foregoing elements of breach of contract, but in a wholly conclusory fashion. Counterplaintiffs set forth five circumstances in which Servpro allegedly changed rules, standards and policies; breached promises it had made to counterplaintiffs; and illegally terminated counterplaintiffs' franchise licenses. However, counterplaintiffs fail to state what rules, standards, and policies Servpro changed; what promises it breached; or how the termination of the franchise licenses breached the franchise agreements. In short, counterplaintiffs fail to state any of the facts underlying the alleged breaches of contract or covenant of good faith and fair dealing.

The court acknowledges that the Federal Rules of Civil Procedure simply require " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 102 (quoting FED.R.CIV.P. 8(a)(2)). However, the court is unable to discern what legal and factual issues are raised in Count I. If the court is unable to determine the basis of counterplaintiffs' claim, there is no reason to assume Servpro will fare any better. Therefore, the court finds that Count I falls short of providing fair notice to Servpro of counterplaintiffs' breach of contract and covenant of good faith and fair dealing claim and the grounds on which it rests.

Accordingly, the court grants Servpro's motion to dismiss Count I of counterplaintiffs' third amended counterclaim.

### 2. Count II—Fraudulent misrepresentation

 To state a claim for fraud, counterplaintiffs must allege that (1) Servpro made a false statement of material fact; (2) knowing it was false; (3) with the intent to induce counterplaintiffs to rely upon it; and that (4) counterplaintiffs reasonably relied upon the misrepresentation (5) to their detriment. *See, e.g., Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 185–86, 65 Ill.Dec. 411, 418, 441 N.E.2d 324, 331 (1982). Furthermore, the Federal Rules of Civil Procedure require that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." FED. R.CIV.P. 9(b). Thus, the complaint must set forth the circumstances of fraud, including the time and place of the fraud, the contents of the omissions or misrepresentations, and the identity of the party perpetrating the fraud. *Marc Development, Inc. v. Wolin,* No. 93 C 2037, 1993 WL 410726, *6–7, 1993 U.S.Dist. LEXIS 13601, *19–20 (N.D.Ill. 1993) (citing *In re Olympia Brewing Co. Securities Litigation,* 674 F.Supp. 597, 619 (N.D.Ill.1987)).

 In their fraudulent misrepresentation count, counterplaintiffs allege that Servpro made five fraudulent misrepresentations. The court finds that each of the five allegations fails to state a claim for fraud. Four of the five paragraphs fail to allege one or more of the elements of fraud, as set forth in *Redarowicz,* 92 Ill.2d at 185–86, 65 Ill.Dec. 411, 441 N.E.2d 324. All of the paragraphs fail to state with particularity the time, place, and other relevant circumstances of the alleged fraudulent misrepresentations, as required by FED.R.CIV.P. 9(b). As with the breach of contract count, the result of these deficiencies is that the pleading fails to give Servpro fair notice of the nature and grounds of the claim against it. *See Conley,* 355 U.S.

at 47, 78 S.Ct. at 102. Thus, the court finds that Count II fails to state a claim for fraudulent misrepresentation.

Accordingly, the court grants Servpro's motion to dismiss Count II of counterplaintiffs third amended counterclaim.

### 3. Count III—Violations of Illinois Franchise Disclosure Act

■ Servpro argues that counterplaintiffs have failed to state a claim under the Illinois Franchise Disclosure Act of 1987 ("the Act"), 815 ILCS 705/1—44, because counterplaintiffs have alleged simply that Servpro violated the Act by terminating counterplaintiffs' franchise licenses without good cause. Servpro contends that this allegation is conclusory and insupportable.

Section 19 of the Act prohibits a franchisor from terminating a franchise located in Illinois prior to the expiration of its term except for good cause. 815 ILCS 705/19(a). Good cause includes the failure of the franchisee to comply with the provisions of the franchise agreement and to cure the default after being given notice of the default and a reasonable opportunity, but not necessarily more than 30 days, to cure the default. 815 ILCS 705/19(b). Furthermore, notice and opportunity to cure are not required where the franchisee repeatedly fails to comply with the lawful provisions of the franchise agreement, among other things. 815 ILCS 705/19(c)(4).

The court finds that counterplaintiffs have failed sufficiently to allege that Servpro violated the Illinois Franchise Disclosure Act. Counterplaintiffs allege merely that Servpro "violated Section 705/19 ... of [the Act] by terminating [counterplaintiffs'] franchise licenses in Illinois prior to the expiration of their terms without 'good cause.'" (Third Am.Counterclaim ¶ 33.) However, their pleading is devoid of any facts supporting this conclusory allegation. Even when the court attempts to read Count III in light of the counterclaim as a whole, the court finds that counterplaintiffs have not provided fair notice of the nature of the claim set forth in Count III and the grounds on which the claim rests. See Conley, 355 U.S. at 47, 78 S.Ct. at 102. Therefore, the court finds that Count III fails to state a claim for violation of the Illinois Franchise Disclosure Act.

Accordingly, the court grants Servpro's motion to dismiss Count III of Schmidt's third amended counterclaim.

### 4. Count IV—Fraudulent scheme to destroy counterplaintiffs' business

■ Counterdefendants contend that counterplaintiffs have failed to allege with sufficient particularity that counterdefendants participated in a fraudulent scheme to destroy counterplaintiffs' business.

Counterplaintiffs allege that Servpro permitted them to defer making royalty payments, but then audited and penalized them for partial payments they received but failed to report. (Third Am.Counterclaim ¶ 22.) Counterplaintiffs allege that Servpro's agents, presumably the individual counterdefendants, manipulated and falsified the audit report, increasing penalties from $7,000 to about $104,000. (Third Am.Counterclaim ¶ 23.) Counterplaintiffs allege that Servpro sent counterplaintiffs a notice of breach letter claiming the $104,000 in penalties, and several months later terminated the franchises. (Third Am.Counterclaim ¶ 24.) Finally, counterplaintiffs allege that counterdefendants "all participated in a scheme to defraud [counterplaintiffs] through falsifying and manipulating the audit report of [counterplaintiffs] with the intent to illegally terminate [counterplaintiffs'] business." (Third Am.Counterclaim ¶ 35.)

■ The court interprets Count IV as pleading conspiracy based on the fraudulent conduct of counterdefendants. A civil conspiracy "involves a combination of two or more persons for the purpose of accomplishing, through concerted action, either an illegal object or a legal object by an illegal means." Dymek v. Nyquist, 128 Ill.App.3d 859, 866, 83 Ill.Dec. 52, 58, 469 N.E.2d 659, 665 (1st Dist.1984) (citations omitted). The gist of the action for conspiracy is not the fact of the conspiracy itself, but the wrongful acts alleged to have been done in furtherance of the conspiracy. Ammons v. Jet Credit Sales, Inc., 34 Ill.App.2d 456, 465, 181 N.E.2d 601, 605 (1st Dist.1962) (citations omitted).

The gist of the conspiracy set forth in Count IV is fraud. Consequently, counterplaintiffs must allege with some measure of particularity the elements of fraud. *See Redarowicz,* 92 Ill.2d at 185–86, 65 Ill.Dec. 411, 441 N.E.2d 324; FED.R.CIV.P. 9(b). They fail to do so. Specifically, counterplaintiffs omit stating that counterdefendants intended to induce counterplaintiffs to rely on the false audit report, and that counterplaintiffs relied on the false audit report to their detriment. Thus, the court finds that Count IV fails to state a claim upon which the court can grant relief.

Accordingly, the court grants counterdefendants' motion to dismiss Count IV of counterplaintiffs' third amended counterclaim.

### 5. Count V—Acceptance of the fruits of the fraud

Counterdefendants contend that Count V is inappropriate because the "fruits of the fraud" legal theory is meant to impose liability on third parties who did not actually participate in the fraud, but knowingly accepted its benefits. According to counterdefendants, the parties that allegedly committed the fraud cannot be liable under the inconsistent theory that they also accepted the fruit of their fraud. Counterplaintiffs counter that they are permitted to plead alternative theories, which is what they have done in Counts IV and V.

The court agrees with counterplaintiffs that they are allowed to plead alternate theories of liability, *see* FED.R.CIV.P. 8(e)(2), and therefore will not dismiss Count V because it is inconsistent with Count IV. However, the court finds that counterplaintiffs have not pleaded their fruits of the fraud claim with the particularity required by FED.R.CIV.P. 9(b). The court agrees with counterdefendants that Count V fails to provide them with notice about who gained what benefits from the alleged fraud, and how they gained the benefits. Therefore, the court finds that Count V fails sufficiently to plead a claim for acceptance of the fruits of the fraud.

Accordingly, the court grants counterdefendants' motion to dismiss Count V of counterplaintiffs' third amended counterclaim. Moreover, because Counts IV and V were the only counts that purported to state a claim against the individual counterdefendants, the court finds that counterplaintiffs' third amended counterclaim now states no cause of action against the individual counterdefendants. Accordingly, the court dismisses Randall Isaacson, Richard Forster, Ted Habermann and James O'Connor as party counterdefendants.

### 6. Count VI—Conspiracy

The conspiracy claim set forth in Count VI alleges a conspiracy between Servpro and another counterdefendant, William Weber. In a memorandum opinion and order dated October 3, 1995, the court held that Count VI sufficiently alleges a claim for conspiracy. Since the court discussed the relevant facts and law at length in the October 3, 1995, memorandum opinion and order, the same discussion here would be unnecessarily duplicative. Accordingly, for the reasons set forth fully in its October 3, 1995, memorandum opinion and order, the court denies Servpro's motion to dismiss and to strike Count VI.

### 7. Count VII—Tortious interference with economic expectancy

To state a claim for tortious interference with a business relationship or economic expectancy, counterplaintiffs must allege that they had a valid business relationship or expectancy of one with William Weber; Servpro knew of that relationship; Servpro intentionally interfered with that relationship by inducing or causing a breach or termination of the relationship; and counterplaintiffs suffered damage because of the breach. *See Commercial Bank of Korea, Ltd. v. Charone, Inc.,* No. 90 C 260, 1990 WL 147072, *3, 1990 U.S.Dist. LEXIS 12824, *8–9 (N.D.Ill.1990).

In their counterclaim, counterplaintiffs allege that, in May 1994, they and Weber reached an agreement in principle that Weber would buy counterplaintiffs' distributorship for $600,000, and thereby established a valid business relationship with Weber and expectancy that they would sell the distributorship to Weber for that price. (Third Am.Counterclaim ¶¶ 26, 42.) Counterplaintiffs allege that Servpro learned of this agreement and intentionally and maliciously induced Weber to breach his business rela-

tionship with counterplaintiffs. Specifically, counterplaintiffs allege that on May 18, 1994, Weber told Servpro's president about his agreement to buy counterplaintiffs' distributorship, and Servpro's president instructed Weber to pay only $250,000 for the distributorship. Weber then offered counterplaintiffs only $250,000 for the distributorship. (*Id.* ¶¶ 27, 43.) Counterplaintiffs allege that Servpro's and Weber's actions were intended to harm counterplaintiffs, were not related to any legitimate or competitive interests, were not privileged, and caused serious damage to counterplaintiffs. (*Id.* ¶ 44.)

The court finds that these allegations are sufficient to state a claim for tortious interference with economic expectancy. Accordingly, the court denies Servpro's motion to dismiss Count VII of counterplaintiffs' third amended counterclaim.

### C. *Lack of personal jurisdiction*

The individual counterdefendants had contended that counterplaintiffs' claims against them, set forth in Counts IV and V, must be dismissed pursuant to FED.R.CIV.P. 12(b)(2) because the court lacks personal jurisdiction over the individual counterdefendants. Because the court already has dismissed counts IV and V and dismissed the individual counterdefendants as party counterdefendants, the motion to dismiss for lack of personal jurisdiction is moot, and accordingly is denied.

### D. *Motion to strike Counts II, IV, V, and VI*

Servpro[4] moves to strike the fraud-based counts (Counts II, IV, and V) and the conspiracy count (Count VI) on the ground that they are not pleaded with particularity. These motions are moot, in light of the court's rulings with respect to these counts. Accordingly, the court denies Servpro's motions to strike Counts II, IV, V, and VI.

### E. *Motion to strike* ad damnum *clauses*

■ Servpro asks the court to strike counterplaintiffs' *ad damnum* clauses on the grounds that counterplaintiffs have not pleaded any basis for such damages and that the compensatory damage requests bear no relation to any conceivable financial harm.

The court finds that dismissing counterplaintiffs' damages claims at this stage of the proceedings would be premature. Counterplaintiffs will be required to prove both that they were injured and the amount of their damages at trial. *Geldermann, Inc. v. Financial Management Consultants, Inc.*, No. 86 C 4347, 1995 WL 22954, *1, 1995 U.S.Dist. LEXIS 484, *2 (N.D.Ill.1995). The amount of damages that should be awarded is a question of fact for the factfinder. *See Arcor, Inc. v. Textron, Inc.*, 960 F.2d 710, 713 (7th Cir.1992). The court does not find that counterplaintiffs' damages claims are so baseless or frivolous that they deserve to be done away with now and taken out of the hands of the trier of fact.

Accordingly, the court denies counterdefendants' motion to strike the *ad damnum* clauses in counterplaintiffs' third amended counterclaim.

### F. *Motion to strike affirmative defenses*

■ Servpro moves to strike all of counterplaintiffs' third amended affirmative defenses to Servpro's first amended complaint on the ground that Servpro is unable to determine the bases upon which the affirmative defenses rest. Neither is the court. Affirmative Defense Nos. 2 through 6 provide no information other than the name of the legal theory on which each affirmative defense is based (*e.g.*, waiver, estoppel, illegality). Affirmative Defense No. 1 provides slightly more information; it states: "[Servpro's] claims are barred by fraud, detailed below with particularity." However, given the court's ruling that counterplaintiffs did not state their fraud-based counts with sufficient particularity to give fair notice of what

---

4. Originally, the individual counterdefendants also moved to strike Counts IV and V, as well as to strike the *ad damnum* clauses, addressed below. However, since the court has dismissed all of the individual counterdefendants as parties, the court will consider the remainder of the motion only with reference to Servpro.

was at issue in those counts, an affirmative defense based on those same deficient allegations cannot give counterdefendants fair notice of the issues the affirmative defense raises. *See Moore, Owen, Thomas & Co. v. Coffey,* 992 F.2d 1439, 1445 (6th Cir.1993) (citing *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971) (the purpose of FED.R.CIV.P. 8(c) is to "give the opposing party notice of the affirmative defense and a chance to rebut it")).

The court concludes that the affirmative defenses raised by counterplaintiffs fail to provide enough information to give counterdefendants notice of the affirmative defenses and a chance to rebut them. Accordingly, Affirmative Defense Nos. 1 through 6 are stricken pursuant to FED.R.CIV.P. 12(f).

### III. *CONCLUSION*

For the foregoing reasons, counterdefendants' motion to strike and to dismiss counterplaintiffs' third amended counterclaim and affirmative defenses is granted in part and denied in part as follows:

(a) On the court's own motion, counterdefendants Ted Isaacson and Richard Isaacson are dismissed as party counterdefendants.

(b) Servpro's motion to dismiss Counts I, II, III, IV, and V is granted.

(c) Servpro's motion to dismiss Counts VI and VII is denied.

(d) The individual counterdefendants' motion to dismiss Counts IV and V is granted. Randall Isaacson, Richard Forster, Ted Habermann, and James O'Connor are dismissed as party counterdefendants.

(e) Servpro's motion to strike Counts II, IV, V, and VI is denied.

(f) Servpro's motion to strike the *ad damnum* clauses is denied.

(g) Servpro's motion to strike Affirmative Defense Nos. 1 through 6 is granted.