172 F.3d 516
 PYRAMID CONTROLS INCORPORATED, an Illinois corporation,
Plaintiff-Appellant,
v.
SIEMENS INDUSTRIAL AUTOMATION, INC., a Delaware corporation,
and Siemens Energy & Automation, Inc., a Delaware
corporation, Defendants-Appellees.
 No. 98-3310.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 11, 1999.
Decided April 5, 1999.
 
 Gary W. Leydig (argued), Levin, McParland, Phillips, Leydig & Haberkorn, Chicago, IL, for Plaintiff-Appellant.
 John R. Myers (argued), Bell, Boyd & Lloyd, Chicago, IL, for Defendants-Appellees.
 Before CUMMINGS, BAUER, and EVANS, Circuit Judges.
 EVANS, Circuit Judge.
 
 
 1
 This case turns on when the one-year statute of limitations clock starts running under the Illinois Franchise Disclosure Act (IFDA). 815 ILCS 705/1 et seq. As in any statute of limitations case, the stakes are high. If the defendant is right, the plaintiff will be shown the door before anyone looks at the merits of his substantive claim.
 
 
 2
 The Pyramid Controls corporation sells and services industrial automation equipment. The Siemens Industrial Automation company manufactures industrial automation equipment. In 1991 the two companies entered into an agreement whereby Pyramid became a Siemens product distributor. In 1995 the deal went sour. Siemens told Pyramid in June that it had decided to turn Pyramid's distributorship over to Steiner Electric Company. In August Siemens gave Pyramid a written one-year notice of termination pursuant to a clause in their agreement. Siemens also requested that Pyramid negotiate with Steiner to transfer the business sooner if possible. A few months later Pyramid and Steiner reached a transfer agreement--mostly because Pyramid did not want to get stuck with half a million dollars in assets related to the Siemens business that had no value on the open market.
 
 
 3
 Shortly after Siemens first told him of the pending termination, Pyramid's president, William McGhee, contacted his attorney, Michael Mann. Mann had represented McGhee in personal and corporate matters for many years. They were old friends. Mann had drafted Pyramid's articles of incorporation and been counsel to Pyramid ever since. McGhee, however, did not like to involve attorneys in business matters if he could help it. He had not consulted with Mann or any other attorney when the original Siemens-Pyramid deal was consummated. But when troubles arose in 1995 McGhee told Mann the whole sordid story of his dealings with Siemens. He wanted to know if there was anything they could do to stop Siemens or was Pyramid simply "cooked."
 
 
 4
 Mann perused the distributorship agreement, considered contract and tort causes of action, and told McGhee that there was no getting around it: Pyramid was cooked. Mann did not consider the Illinois Franchise Act. He had never represented a franchisee (or franchisor for that matter) or done any legal work in connection with franchises. He apparently did not recognize that the Siemens-Pyramid agreement might qualify as a franchise arrangement. A franchise law maven he was not. Throughout the fall of 1995, as the deal with Steiner was being negotiated and put in place, McGhee sent copies of the paperwork to Mann and continually asked him if there was anything more that Pyramid could do. Mann repeatedly said no.
 
 
 5
 As it turns out, there apparently was something that Pyramid could do. In September 1996 McGhee read an article about a case under the Illinois Franchise Act that an attorney named Gary Leydig had won on behalf of a franchisee. Leydig, it would appear, was a Franchise Act maven. McGhee thought the story sounded a lot like his dealings with Siemens, so he called Leydig. McGhee and Leydig met in January 1997. McGhee presented Leydig with the same information he had presented to Mann, but Leydig asked more questions. Leydig immediately determined that the elements of a franchise under Illinois law were present in the Siemens-Pyramid contract. Leydig then decided, after further research, that Siemens had wrongfully terminated Pyramid. Leydig filed the instant suit on behalf of Pyramid in May 1997.
 
 
 6
 Siemens moved for summary judgment because the Franchise Act's one-year statutory period had passed. Judge Blanche M. Manning granted the motion, and Pyramid appeals. We review the district court's grant of summary judgment de novo. See Altheimer & Gray v. Sioux Mfg. Corp., 983 F.2d 803, 808 (7th Cir.1993).
 
 
 7
 The only issue on appeal is whether Pyramid's claim is time-barred. Franchise Act claims are barred "unless brought before ... the expiration of one year after the franchisee becomes aware of facts or circumstances reasonably indicating that he may have a claim for relief with respect to conduct governed by this Act...." 815 Ill. Comp. Stat. § 705/27. The key to the case today is how we interpret the "discovery rule" for this statute of limitations. In other words, at exactly what point has the plaintiff discovered sufficient facts and circumstances to start the statute of limitations clock ticking? Unfortunately there is precious little Illinois law (which controls this diversity case) on this subject, and we have found no appellate cases discussing the discovery rule under the statute of limitations since the Franchise Act was amended in 1987. Before 1987 the one-year statute of limitations was triggered by "discovery of the fact constituting a claim." Ill.Rev.Stat.1977, ch. 121+, p 722.
 
 
 8
 The district court analyzed the amended statutory language and found, based in part on an unpublished Massachusetts district court decision interpreting the IFDA, that "at a minimum, the one-year time limitation of section 705/27 begins once the plaintiff has presented sufficient facts and/or circumstances to his attorney that 'reasonably indicate' that the plaintiff might have a claim under the IFDA." There is no dispute that McGhee presented such facts and/or circumstances to his attorney, Mann, sometime in the fall of 1995. Therefore, the district court held, the statutory clock had run by the fall of 1996, and Pyramid's claim was time-barred when filed in May of 1997.
 
 
 9
 Not surprisingly, Pyramid thinks the district court got it wrong. Pyramid argues that under the proper Franchise Act discovery rule, the statutory clock does not start ticking until the plaintiff has actual knowledge that there is a claim under the Act. There is no dispute that McGhee did not have such actual knowledge of his Franchise Act claim until early 1997 when he talked with Leydig for the first time. Therefore, Pyramid argues, the claim filed in May 1997 was well within the one-year statutory period. To support this position, Pyramid relies most heavily on Brenkman v. Belmont Marketing, Inc., 87 Ill.App.3d 1060, 43 Ill.Dec. 500, 410 N.E.2d 500 (1980). Brenkman addressed the Franchise Act recission rule. Under that rule, a franchisee can void the franchise agreement "within 90 days after the franchisee ... shall have knowledge of a violation of this Act [by the franchisor]." The Brenkman court held that for purposes of the recission rule, "knowledge of a Franchise Act violation is a mixed question of law and fact on which the layman is entitled to acquire his first knowledge from an attorney." Brenkman, 43 Ill.Dec. 500, 410 N.E.2d at 504. Borrowing a page from securities law, the court decided that "where the statute established a protected class, knowledge of statutory rights contingent on questions of law would not be imputed to that protected class absent advice of counsel." Brenkman, 43 Ill.Dec. 500, 410 N.E.2d at 504. Because franchisees are a protected class under the Franchise Act, the court refused to impute knowledge of a violation before the plaintiff had consulted with his attorney.
 
 
 10
 Siemens argues vociferously that Brenkman is inapplicable to this case because the recission rule and the current statute of limitations are worded quite differently. But even if we accept the Brenkman rationale that franchisees are a protected class under the Act and are therefore entitled to a very forgiving discovery rule, the courthouse door is still closed to Pyramid. In Brenkman the court simply found that the statute of limitations was tolled until the plaintiff first consulted with an attorney and learned that he had a claim. See Brenkman, 43 Ill.Dec. 500, 410 N.E.2d at 504. It did not address what would happen if a plaintiff's first attorney, like Mann here, failed to tell him of a potential claim. None of the other cases Pyramid cites address this precise issue either. See My Pie Int'l, Inc. v. Debould, Inc., 687 F.2d 919, 923 (7th Cir.1982) (holding that plaintiffs did not know of the violation for statute of limitations purposes until they had consulted with their attorneys about the relevant facts); Marathon Petroleum Co. v. LoBosco, 623 F.Supp. 129, 134 (N.D.Ill.1985) (summary judgment denied because it was not clear when plaintiff first presented sufficient facts to his attorney); Port City Leasing v. Loffredo, 114 Ill.App.3d 775, 70 Ill.Dec. 560, 449 N.E.2d 907, 909 (Ill.App.Ct.1983) (summary judgment based on statute of limitations was inappropriate when record did not disclose when plaintiff learned of facts indicating a franchise relationship or when he presented those facts to his attorney).
 
 
 11
 Pyramid argues that only the plaintiff's actual knowledge can trigger the statute of limitations because the Franchise Act is so complicated and obscure very few attorneys understand how it works or even know of its existence. We seriously doubt that the Franchise Act is more difficult or obscure than any number of other statutory schemes. There is no question that Brenkman states an Illinois policy to give franchisees a break on the statute of limitations until they have had a chance to consult with an attorney. But Brenkman specifically held that "knowledge of statutory rights contingent on questions of law would not be imputed to [a member of a protected class] absent advice of counsel." Brenkman, 43 Ill.Dec. 500, 410 N.E.2d at 504 (emphasis added). Here, McGhee had ample advice of counsel beginning in the fall of 1995. It just so happened that Mann didn't provide very good advice.
 
 
 12
 Pyramid's version of the discovery rule also contradicts the plain language of the statute of limitations at issue. Franchise Act claims must be filed within "one year after the franchisee becomes aware of facts or circumstances reasonably indicating that he may have a claim for relief...." 815 Ill. Comp. Stat. § 705/27 (emphasis added). If the Illinois Legislature had chosen the "actual knowledge" rule that Pyramid proposes, the statute would read "one year after the franchisee becomes aware that he may have a claim for relief...." The "facts or circumstances" language that the Illinois Legislature included must mean that something less than actual knowledge of a claim is required to trigger the statutory period. The Illinois courts have decided that knowledge of facts reasonably indicating a claim plus consultation with an attorney is enough.
 
 
 13
 Nothing that we have found in the law of Illinois gives franchisees the right to shop from attorney to attorney until they land on one who, like Mr. Leydig, actually understands franchise law.[1] All lawyers are presumed to know the law, and if they don't know a specific area of law well, they are obligated to consult with other lawyers who do. No statute of limitations is triggered by a level of knowledge so sophisticated that only a handful of lawyers could know whether a claim existed. Illinois law may not impute knowledge of the Franchise Act to unsophisticated franchisees, but it certainly imputes such knowledge to licensed attorneys. Any other rule would be unworkable.
 
 
 14
 Every operation of a statute of limitations is harsh because it denies access to the courts to a plaintiff who may very well have a winning claim. But good policy dictates that the filing period for most claims be limited, and the line must be drawn somewhere. For the Franchise Act, the Illinois Legislature has drawn the line at one year from discovery of facts reasonably indicating a claim. The Illinois courts have promulgated a lenient discovery rule: the statute of limitations is triggered when the plaintiff presents facts reasonably indicating a claim to his or her attorney. In this case, McGhee presented more than enough facts to indicate a Franchise Act claim to his attorney, Mann, in the fall of 1995. When McGhee found out from Leydig in 1997 that he may have had a claim after all, his best cause of action may have been a claim against Mann. Because his Franchise Act cause of action filed against Siemens in 1997 is time-barred, we must affirm the judgment of the district court.
 
 
 
 [1]
 Pyramid points out that such attorney shopping would not be indefinite because the Franchise Act has a 3-year statute of repose. See 815 Ill. Comp. Stat. § 705/27. The existence of the statute of repose does not, however, absolve us of our obligation to enforce a statute of limitations that the Illinois Legislature has deemed appropriate